
Patricia A. BELL, Appellant,

v.

WESTINGHOUSE ELECTRIC
CORPORATION, Appellee.

No. 85–310.

District of Columbia Court of Appeals.
Argued Oct. 25, 1985.
Decided April 14, 1986.

Charles C. Parsons, Washington, D.C.,
for appellant.

Charles J. O'Hara, Washington, D.C.,
with whom Philip Walsh, Washington,
D.C., was on brief, for appellee.

Before NEBEKER, MACK, and FER-
REN, Associate Judges.

FERREN, Associate Judge:

The issue on appeal in this tort case is
whether interest on a plaintiff's judgment
vacated by the trial court—but reinstated
after appeal by a mandate that did not
mention interest—shall run from the date
of the verdict and original judgment or
from the date the verdict and judgment
were reinstated. We hold that, absent an
express provision in our mandate, interest
shall run from the date of the verdict and
original judgment. Because the trial court
ruled incorrectly, we reverse and remand.

## I.

The facts of the underlying action are
recited in *Bell v. Westinghouse Electric
Corp.*, 483 A.2d 324, 326 (D.C.1984) (*Bell I*).
We summarize only the procedural history
pertinent to this second appeal.

On January 27, 1983, a jury awarded
appellant Bell $65,000 as compensation for
injuries she suffered when her foot was
caught in an escalator manufactured by
appellee Westinghouse. The same day, the
trial court entered judgment on the verdict,
ordering "that the [p]laintiff Patricia A.
Bell recover of the defendant Westing-
house Electric Corporation the sum of $65,-
000.00 with interest thereon from 1–27–83
at the rate ... provided by law, and [her]
costs of [the] action."

On February 7, 1983, the trial court *sua
sponte* vacated the judgment and granted a
new trial. Bell appealed from this order,
requesting reinstatement of the jury's ver-
dict "with interest from the date of said
judgment." On October 30, 1984, in *Bell I*,
this court held that the trial court had
abused its discretion in granting a new
trial; we "reverse[d] and remand[ed] for

reinstatement of the jury's verdict." 483 A.2d at 329. We made no statement about interest. On November 27, 1984, our judgment and opinion were transmitted as our mandate to the Clerk of the Superior Court, in accordance with D.C.App.R. 41 (a).

On December 6, 1984, Bell moved the trial court for reinstatement of the jury's verdict with interest running from the date of the trial court's original judgment. On December 17, the trial court granted Bell's motion, ordering interest to run from January 27, 1983 at the statutory rate of eight percent per annum.

Westinghouse moved for reconsideration based on *Briggs v. Pennsylvania Railroad Co.,* 334 U.S. 304, 68 S.Ct. 1039, 92 L.Ed. 1403 (1948), arguing that, because our mandate was silent as to interest, none was awardable for the period before entry of our judgment and opinion in *Bell I* on October 30, 1984. The trial court granted the motion for reconsideration and, on March 4, 1985, amended its December 17 order to award interest only from October 30, 1984.

On appeal, Bell urges that *Briggs* is inapplicable. Bell accordingly asks this court to reverse the trial court's amended order and to reinstate that court's original award of statutory interest on the $65,000 (which Westinghouse has paid) from January 27, 1983, the date of the original jury verdict and judgment.

## II.

In assessing Bell's contention, we note, first, that the Supreme Court's decision in *Briggs* pertained only to statutory interest awardable by the federal courts. Thus, *Briggs* and the federal cases which have interpreted it do not necessarily dictate how the District of Columbia trial courts must deal with interest, under our local statute, when this court's mandate reinstating a verdict is silent on the subject. The federal caselaw development, however, is comprehensive and informative. Accordingly, we draw on this development in deciding a case of first impression for the District of Columbia.

### A.

In *Briggs,* the jury returned a verdict awarding plaintiff damages, but the district court, instead of entering judgment on the verdict, granted defendant's motion to dismiss the complaint for lack of jurisdiction. Plaintiff appealed, and the Court of Appeals for the Second Circuit reversed, directing entry of judgment on the verdict. 153 F.2d 841 (2d Cir.1946). The court's mandate, however, was silent as to interest. Plaintiff did not move to recall and amend the mandate; the time for doing so expired. After remand, the district court entered judgment for plaintiff, as directed, and also awarded interest from the date of the verdict. This time, defendant appealed. The Court of Appeals modified the judgment to exclude interest for the period between verdict and judgment. The court stated that plaintiff only became "entitled" to a judgment when "ordinary appellate proceedings had been completed," that the district court did not have "power to enter a judgment" for a sum that did not conform to the mandate, and that even if the court of appeals would have amended the mandate to include interest from the date of the verdict, it was too late under the rules to recall the mandate for that purpose, absent an "exceptional" circumstance, *e.g.,* a "fraud upon the court." 164 F.2d 21, 23 (1947). The Supreme Court affirmed, stating that the district court

> has no power or authority to deviate from the mandate issued by an appellate court.... It is clear that the interest was in excess of the terms of the mandate and hence was wrongly included. ... The ... court's mandate made no provision for such interest and the trial court had no power to enter judgment for an amount different than directed. If any enlargement of that amount were possible, it could be done only by amendment of the mandate.

334 U.S. at 306, 68 S.Ct. at 1040.

By focusing solely on the terms of the mandate and on the power of the court of

appeals alone to amend it, the Court's majority declined to address an alternative analysis proffered by the four *Briggs* dissenters, 334 U.S. at 307, 68 S.Ct. at 1040, based on *Louisiana & Arkansas Ry. Co. v. Pratt*, 142 F.2d 847 (5th Cir.1944). In the first *Pratt* appeal, the Fifth Circuit had reversed a judgment n.o.v. and ordered reinstatement of the jury's verdict for plaintiff. The mandate was silent as to interest. 135 F.2d 692, 693 (5th Cir.1943). In the second *Pratt* appeal, the court held that its silent mandate should be construed, as a matter of law, to include the interest automatically provided by federal statute, 28 U.S.C. § 811 (now 28 U.S.C. § 1961), which is calculated from the date of the judgment. 142 F.2d at 849. The *Briggs* dissenters agreed with that proposition, adding that the Court, accordingly, should have dealt with the next question: what is the "date of the judgment" from which the statutory interest should be calculated— the "date of the verdict" or the "time of entering judgment after receipt of the appellate court's mandate"?[1]  334 U.S. at 308–09, 68 S.Ct. at 1041. In view of the *Briggs* majority disposition, the dissenters declined to reach that question.

The Fifth Circuit in *Pratt*, however, had answered it. The court had noted that pursuant to Fed.R.Civ.P. 58 the date of judgment on a verdict should be the date of the jury verdict itself unless the court directs otherwise. The court had therefore stressed it was "within the equity of Section 966 of the Revised Statutes [28 U.S.C. § 811] to award interest from the date of the verdict where, without fault of the plaintiff, an appreciable time has elapsed between the rendition of the verdict and the entry of the judgment." 142 F.2d at 849 (citations omitted). The *Pratt* court accordingly had concluded that when a court of appeals reinstates a verdict after reversing a judgment n.o.v., without men-

tioning interest, the trial court should interpret the mandate to include statutory interest, as a matter of equity, "from the date judgment should have been entered as required by said Rule 58"—in that case the date of the verdict. 142 F.2d at 849.

The Supreme Court majority in *Briggs* did not necessarily foreclose *Pratt's* equitable application of the federal interest statute. Acknowledging the different approaches by the courts of appeals in *Pratt* and *Briggs*, the Court merely stressed that the proper avenue of relief for the party prevailing on appeal was to file a timely motion to recall and amend the mandate. 334 U.S. at 306, 68 S.Ct. at 1040. The courts of appeals themselves—not the district courts—can construe or modify mandates which are silent as to interest. "Hence, the question whether interest might, on proper application, have been allowed, [was] not reached." 334 U.S. at 307, 68 S.Ct. at 1040 (citation omitted).

**B.**

Although the Court in *Briggs* expressly referred to only one question "not reached," the Court actually left open two questions: (1) how the federal interest statute should be applied, and (2) whether the courts of appeals must limit prevailing plaintiffs to an appellate court remedy in every case, or instead may announce a general rule for the district courts to apply, on the appellate court's behalf, when the mandate remanding a case neglects to deal with interest. This second question was unresolved in *Briggs* because the Supreme Court arguably did no more than sustain the Second Circuit's interpretation of its own silent mandate; it did not unquestionably foreclose other circuits from announcing different interpretations, as in *Pratt*, for mandates that omit interest.

---

1. Given these two alternatives, which other courts have perceived as analytically correct, *e.g., Buck v. Burton*, 768 F.2d 285, 286 (8th Cir.1985), it is not clear why Westinghouse and the trial court settled upon interest from the date of this court's judgment and opinion, October 30, 1984, instead of from the date the trial court entered judgment after issuance of this court's mandate on November 27, 1984.

Interestingly, divisions of the Fifth Circuit have answered the second question both ways. In *Woods Exploration and Producing Company, Inc. v. Aluminum Company of America*, 509 F.2d 784, 789 (5th Cir.), *cert. denied*, 423 U.S. 833, 96 S.Ct. 59, 46 L.Ed.2d 52 (1975), the court, citing *Pratt*—without mentioning *Briggs* —sustained a district court's award of interest as of the date the original judgment for plaintiff should have been entered, even though the mandate reversing a judgment n.o.v. and ordering reinstatement of the verdict did not mention interest, and the plaintiff had failed to seek amendment of the mandate. More recently, however, in *Gele v. Wilson*, 616 F.2d 146, 149 (5th Cir.1980), the court—without citing *Woods Exploration*—construed *Briggs* to provide exclusively for an appellate court remedy, irrespective of the right to statutory interest. According to *Gele*, only a court of appeals can decide, by amending a silent mandate, what interest, if any, is awardable under the federal statute for the period before remand.

*Gele* relied substantially on *Givens v. Missouri-Kansas-Texas R. Co. of Texas*, 196 F.2d 905 (5th Cir.1952), where the court of appeals had ruled on plaintiff's motion to amend the mandate, calling it "the proper procedure [for seeking interest] as approved by the Supreme Court in *Briggs.*" *Id.* *Givens* had applied *Pratt's* equitable approach and awarded interest as of the date of the original judgment. Thus, the Fifth Circuit, while apparently continuing

to adhere to *Pratt's* equitable approach to the federal interest statute, on at least one occasion, in *Gele*, has concluded on the basis of *Briggs* that the route to the remedy is more critical than the remedy itself. If that route is not followed, suggests *Gele*, a plaintiff must forego interest to which he or she would otherwise be entitled.[2]

Aside from the Fifth Circuit, the federal courts of appeals which have dealt with this problem have, in effect, merged the two questions that *Briggs* left open. Those which have interpreted *Briggs* to mean that the appellate court is the exclusive forum for construing every mandate silent as to interest have concluded that 28 U.S.C. § 1961[3] does not require accrual of interest until after entry of judgment on remand. But those courts of appeals which have interpreted *Briggs* to permit the announcement of general rules applicable to mandates that omit reference to interest have concluded that § 1961 requires accrual of interest on or near the date of the verdict. Interestingly, the first group of courts has, in effect, used its "exclusive forum" reading of *Briggs* to dictate its interpretation of § 1961, whereas the second group has used its interpretation of § 1961 to dictate a "general rule" approach to silent mandates.

Decisions in the Second and Seventh Circuits reflect the first development. Noting that the Supreme Court in *Briggs* had "expressly left open" the question of how the

**2.** *Gele v. Wilson*, 616 F.2d 146 (5th Cir.1980), was more complicated than the other Fifth Circuit cases dealing with *Briggs v. Pennsylvania R.R. Co.*, 334 U.S. 304, 68 S.Ct. 1039, 92 L.Ed. 1403 (1948). The trial court, sitting without a jury, had awarded $75,000 damages against one defendant. The court of appeals had remanded for a determination of comparative fault between two defendants, without mentioning interest. The issue on the second appeal was whether interest on the amount to be recovered from a second defendant, found 20% responsible, should run from the date of the original judgment or—as the district court had ruled— from the date of the judgment against that defendant after remand. The Fifth Circuit held the plaintiff had failed to seek reformation of

the mandate to clarify the situation, pursuant to Fed.R.App. P. 37, and that the district court, therefore, had properly followed *Briggs*. The court added that the equities, in any event, did not altogether favor plaintiff because the second defendant had not been found culpable until the proceeding after remand.

**3.** 28 U.S.C. § 1961 (a) (1982 & Supp.1985) provides in relevant part:
  Interest shall be allowed on any money judgment in a civil case recovered in a district court.... Such interest shall be calculated from the date of the entry of the judgment at the rate allowed by State law.

552

federal statute applies, the Second Circuit has interpreted § 1961 in a way that conformed to that Circuit's own nonstatutory analysis in *Briggs.* In *Powers v. New York Central Railroad Company,* 251 F.2d 813 (2d Cir.1958), the court ruled on a motion to amend its mandate based on the court's failure to comply with Fed.R.App.P. 37, which provides that "the mandate shall contain instructions with respect to allowance of interest." [4] The court held that when it reverses a judgment n.o.v. and reinstates a jury verdict, § 1961 only requires that interest shall "be calculated from the date of entry of the judgment on mandate," since "[t]he delay in the entry of the proper judgment was necessary in the sense that time for appellate review was required." 251 F.2d at 818 (quoting *Chemical Bank & Trust Co. v. Prudence-Bonds Corp.,* 213 F.2d 443, 445 (2d Cir.), *cert. denied,* 348 U.S. 856, 75 S.Ct. 80, 99 L.Ed. 674 (1954)).

Similarly, the Seventh Circuit affirmed a district court's refusal to award interest from the date of a verdict when the mandate reversing a judgment n.o.v. failed to mention interest. *Lee v. Terminal Transport Co.,* 301 F.2d 234 (7th Cir.1962), *construing* 282 F.2d 805 (1960), *cert. denied,* 365 U.S. 828, 81 S.Ct. 713, 5 L.Ed.2d 705 (1961), *enforcing* 269 F.2d 97 (7th Cir.1959). In contrast with the Second Circuit, however, the Seventh Circuit construed *Briggs* to hold, implicitly, that the statutory predecessor of § 1961, and thus § 1961 itself, did not require accrual of interest until the date of the judgment entered after remand.

In short, *Powers* and *Lee,* by somewhat different routes, held that § 1961 only requires interest to run from the entry of judgment on the appellate court mandate, not from the date of the original verdict. Thus, unless the court of appeals itself perceives a basis under § 1961 or otherwise for awarding interest from an earlier

date—and says so in its original or amended mandate—a district court in the Second or Seventh Circuits has no power to award interest.

In contrast, the Eighth and Ninth Circuits, like the Fifth, have adopted *Pratt's* "equitable" approach, announcing that whenever the court of appeals reverses a judgment n.o.v. and neglects to mention interest in the mandate, interest under § 1961 should run from the date of the verdict (or from the date of a judgment entered on the verdict soon thereafter). *Buck v. Burton,* 768 F.2d 285 (8th Cir. 1985) (date of original judgment); *Turner v. Japan Lines, Ltd.,* 702 F.2d 752 (9th Cir.1983) (date of verdict).

In *Buck* and *Turner,* as in *Powers,* the courts ruled on motions to amend the mandate—the procedural remedy announced in *Briggs.* It is important to stress, however, that the courts in *Buck* and *Turner* were construing the requirements of the federal interest statute, not merely interpreting the meanings of their own silent mandates in particular cases. Accordingly, although *Buck* and *Turner* did not directly deal with *Briggs'* threshold question of the trial courts' power to enlarge an appellate court mandate, the courts' applications of § 1961 to a mandate silent as to interest obviously telegraphed a general rule for the district courts to follow in construing such a mandate: it should be deemed to incorporate—because by federal statute it must incorporate—interest from the date of the verdict or the original judgment on the verdict. For that reason, the failure of an appellate court to mention interest, in reinstating a verdict or judgment, is innocuous; indeed, a provision for interest would be superfluous. *See Handgards, Inc. v. Ethicon, Inc.,* 743 F.2d 1282 (9th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 963, 83 L.Ed.2d 968 (1985); *Twin City Sportservice, Inc. v.*

4. Fed.R.App.P. 37 provides:
   Unless otherwise provided by law, if a judgment for money in a civil case is affirmed, whatever interest is allowed by law shall be payable from the date the judgment was entered in the district court. If a judgment is modified or reversed with a direction that a judgment for money be entered in the district court, the mandate shall contain instructions with respect to allowance of interest.

*Charles O. Finley & Co.,* 676 F.2d 1291 (9th Cir.), *cert. denied,* 459 U.S. 1009–10, 103 S.Ct. 364, 74 L.Ed.2d 400 (1982); *Mt. Hood Stages, Inc. v. Greyhound Corp.,* 616 F.2d 394 (9th Cir.), *cert. denied,* 449 U.S. 831, 101 S.Ct. 99, 66 L.Ed.2d 36 (1980).

It follows that a prevailing plaintiff in the Eighth and Ninth Circuits is not limited to an appellate court remedy pursuant to Fed.R.App.P. 37. That plaintiff, to be sure, may return to the appellate court for reformation of the mandate; but, alternatively, he or she may ask the district court, after remand, for interest as of the date of the verdict or original judgment. *E.g., Handgards,* 743 F.2d at 1298.

## C.

We note that in *Powers* and *Lee,* where interest was not allowed to accrue until after issuance of the appellate court mandate, no judgments had been entered on the verdicts before the district courts entered judgments n.o.v. In *Buck* and *Turner,* however, judgments had been entered on the verdicts before the judgments n.o.v. None of these decisions focused on the significance of whether a judgment on the verdict had been originally entered. Two district courts, however, in circuits where the courts of appeals had not yet spoken on the § 1961 issue, have used such a distinction to limit *Briggs.*

In *Taylor v. Washington Terminal Company,* 308 F.Supp. 1152 (D.D.C.1970), and *Fassbinder v. Pennsylvania Railroad Company,* 233 F.Supp. 574 (W.D.Pa.1964), the district courts had entered judgments on the original verdicts and then vacated them before the courts of appeals ordered reinstatement. On remand, the district courts held that § 1961 applied, that interest automatically attached as a legal incident to the original judgments, and that plaintiffs accordingly were entitled to interest from the original judgment dates.

*Taylor* and *Fassbinder* distinguished *Briggs* by noting that § 1961 by its terms provides for interest only upon a "judgment," that the trial court in *Briggs* had

not initially entered a judgment on the verdict, that the "mandatory provisions" of § 1961 were therefore inapplicable as of the date of the verdict, that the court of appeals' mandate did not specifically override this "prerequisite to the running of interest," and that the trial court accordingly lacked authority to modify the mandate, which directed entry, for the first time, of a judgment to which statutory interest could attach. More specifically:

> Neither in Briggs nor in its progeny did a situation exist wherein the District Court had entered a judgment which, after being erroneously vacated, was subsequently ordered reinstated by mandate of a Court of Appeals. The fact that entry of a judgment is a prerequisite to the running of interest thereon can scarcely be disputed.

*Taylor,* 308 F.Supp. at 1154 (quoting *Fassbinder,* 233 F.Supp. at 575 (emphasis omitted)). According to *Taylor* and *Fassbinder,* therefore, when the appellate court mandate is silent as to interest, *Briggs* should be interpreted only to preclude the trial court, on remand, from awarding interest from the date of the verdict when no judgment was originally entered on the verdict.

One division of the Ninth Circuit has recognized, at least implicitly, the *Taylor-Fassbinder* approach to limiting *Briggs. See Mt. Hood Stages,* 616 F.2d at 407. A division of the Fifth Circuit has rejected it. *See Gele,* 616 F.2d at 149. In any event, the distinction is not principled, for under *Taylor* and *Fassbinder* the right to interest will turn not on the equities of the situation but on the fortuity of whether the trial court or the court clerk did—or did not—enter judgment on the verdict "forthwith," pursuant to Fed.R.Civ.P. 58, before the trial court vacated the jury's award. There is no discernible reason why a plaintiff's right to interest from the date of the verdict should depend on whether a ministerial act had been accomplished, *i.e.,* on whether the verdict had been transformed

into a judgment before the trial court entered a judgment n.o.v.

### D.

In summary, several courts of appeals have forbidden district courts to award § 1961 interest, in the face of a silent mandate, because they have understood *Briggs* to mean that only the appellate courts themselves may resolve the interest question, case by case. *E.g., Gele,* 616 F.2d at 149. Other courts of appeals have permitted district courts to award § 1961 interest, when confronted by a silent mandate, because they have found room under *Briggs* to announce general rules for district courts to follow in applying the federal interest statute. *E.g., Handgards,* 743 F.2d at 1298. In this respect, the appellate courts' understanding of *Briggs,* as we have seen, has generally turned on whether they have concluded the federal interest statute (1) permits deferral of interest until judgment after remand, such that the trial court would have no basis for construing a silent mandate, *Lee; Powers,* or (2) requires *Pratt's* equitable approach favoring interest from the date of the verdict or original judgment, such that a silent mandate legally cannot stand in the way of statutory interest from that date. *Buck; Turner. Contra, Gele.*

It is not for us to construe the federal interest statute. But we can say that, even if § 1961 does not require interest as of the date of the verdict, we do not perceive why a court of appeals, and not the trial court, must apply the statute in the first instance, case by case. The interpretation of *Briggs* requiring an exclusive appellate court forum for resolving interest issues, after a reversal and remand, only makes sense on the dubious premises that an appellate court is not in a position to announce general rules of statutory construction, but is in a better position than the trial court to evaluate the equities of a particular case and thus may properly charge counsel and client, under Fed.R.App.P. 37, with knowing that the court of appeals alone can

provide a statutory remedy. Such reasoning is unpersuasive.

We believe the approach of the Eighth and Ninth Circuits is preferable, *i.e.,* permitting the court of appeals to announce general rules for applying the interest statute when the mandate remanding a case is silent on the subject. That approach not only will promote judicial economy but also will be more fair to a prevailing party who might be entitled to statutory interest from the date of the verdict, if counsel had not failed to seek timely reformation of the mandate.

### III.

With this background, we turn to District of Columbia law and to the meaning of this court's mandates that are silent as to interest. We stress again that *Briggs,* as well as federal court constructions of 28 U.S.C. § 1961 and Fed.App.R. 37, are informative but not binding authority.

### A.

The District of Columbia interest statute, while less precise as to tort actions than 28 U.S.C. § 1961, *supra* note 3, is similar to it. D.C. Code § 15–109 (1981) provides:

> In an action to recover damages for breach of contract the judgment shall allow interest on the amount for which it is rendered from the date of the judgment only. This section does not preclude the jury, or the court, if the trial be by the court, from including interest as an element in the damages awarded, if necessary to fully compensate the plaintiff. In an action to recover damages for a wrong the judgment for the plaintiff shall bear interest.

The first sentence, pertaining to interest on judgments for breach of contract, specifies that interest shall run "from the date of the judgment only." The second sentence permits the trial court to award, at its discretion, prejudgment interest, when necessary for full compensation in contract actions. *See Edmund J. Flynn Co. v. Le-*

*Vay,* 431 A.2d 543, 550 n. 6 (D.C.1981); *Schneider v. Lockheed Aircraft Corp.,* 212 U.S.App.D.C. 87, 107–09, 658 F.2d 835, 855–57 (1981), *cert. denied,* 455 U.S. 994, 102 S.Ct. 1622, 71 L.Ed.2d 855 (1982). The final sentence—applicable here—simply provides that judgments in tort actions "shall bear interest." In context this means, as a general rule, that interest on judgments in tort actions, as in contract actions—and as under 28 U.S.C. § 1961— begins to run from the date of the judgment, *see Schneider;* no more flexible, later date is implied.[5]

The question, then, is what is the date of the "judgment" when interest begins to run under § 15–109? Arguing against the *Pratt, Buck,* and *Turner* line of cases, Westinghouse asserts that it would be inequitable to require Westinghouse to pay interest, accrued during the pendency of the appeal, when there was no judgment to pay because the original judgment had been vacated. We disagree.

During the period between the jury's verdict and completion of the appeal, from January 27, 1983 to October 30, 1984, Westinghouse had the use of $65,000 which, as it turned out, rightfully belonged to Bell. The purpose of tort damages is to make the injured party whole again. Minzer, *et al.,* DAMAGES IN TORT ACTIONS § 1.02 at 1–6 (1985). A jury verdict awarding such damages is therefore calculated to compensate the plaintiff in an amount that will make her whole as of the date of that verdict. Any delay between verdict and payment of the award (assuming positive interest rates) devalues the verdict; as time passes without payment, the present value of the damage award declines unless compensating interest accrues. In short, unless a prevailing plaintiff receives interest over the period between verdict and payment, she will be rendered less than whole by the award she eventually receives, with the result that the plaintiff loses, while the defendant gains, from the trial court's error. *See Turner,* 702 F.2d at 756–57 & n. 5; *Powers,* 251 F.2d at 819 (Lumbard, J., dissenting); Note, *Interest on Judgments in the Federal Courts,* 64 YALE L.J. 1019, 1028 (1955). Contrary to Westinghouse's view, equity runs in appellant Bell's favor.

Impressed by this reasoning, we construe D.C. Code § 15–109 (1981) to require *Pratt's* equitable approach. Accordingly, when this court reinstates a plaintiff's verdict, interest shall run from the date the judgment should have been entered pursuant to Super.Ct.Civ.R. 58: the date of the verdict. The reasoning of *Powers* and *Lee* to the contrary is wholly unpersuasive. This does not end the inquiry, however, for a number of practical problems must be addressed in order to demonstrate why we reach this result.

**B.**

The first problem is attributable to the fact that the most equitable date for accrual of interest is the date of the verdict, whereas interest under § 15–109 begins to run from the date of the "judgment." Ordinarily, the date of the judgment is the date of the verdict, since Super.Ct.Civ.R. 58 provides that "[u]pon a general verdict of a jury, ... the Clerk, unless the Court otherwise orders, shall forthwith prepare, sign, and enter the judgment without awaiting any direction by the Court." *See Turner,* 702 F.2d at 756 n. 5 (construing identical federal rule); *Pratt,* 142 F.2d at 849 (same). Alternatively, as in the present

---

**5.** In *Schneider v. Lockheed Aircraft Corp.,* 212 U.S.App.D.C. 87, 658 F.2d 835 (1981), *cert. denied,* 455 U.S. 994, 102 S.Ct. 1622, 71 L.Ed.2d 855 (1982), the United States Court of Appeals for the District of Columbia Circuit held that the second sentence of D.C. Code § 15–109 (1981), permitting prejudgment interest, does not apply to tort actions. This court has not addressed that question. However, we have permitted the award of prejudgment interest where there was a contractual relationship, but the action was not framed as a breach of contract. *See Edmund J. Flynn Co. v. LeVay,* 431 A.2d 543, 548, 550 n.6 (D.C.1981) (prejudgment interest permitted where court concluded no sales commission contract had been created and recovery was allowed only on basis of implied and express agency agreements).

case, the trial court ordinarily enters judgment on the day of the verdict.

There are likely to be cases, however, where no judgment is entered on the verdict, or a judgment is entered a few days after the verdict, before the trial court dismisses for lack of jurisdiction, or orders a new trial, or enters a judgment n.o.v. In all these situations, we agree with *Turner* that, after reversal and remand for reinstatement of the verdict and/or judgment, the date of the "judgment" for § 15–109 purposes should be deemed to be the date of the verdict—the date the judgment for plaintiff should have been entered, pursuant to Super.Ct.Civ.R. 58, but for the court's delay and erroneous ruling. In *Turner*, the clerk entered judgment on the verdict four days after the verdict; the trial court then entered a judgment n.o.v. The court of appeals reversed and reinstated the original judgment, with interest to run from the date of verdict, not from the date of the judgment four days later. 702 F.2d at 753 & n. 1. We agree: "Using solely the date of the verdict to commence the running of § 1961 interest ... produces a much more uniform and theoretically sound result." 702 F.2d at 755 n. 2.[6]

### C.

In reaching this conclusion, however, we have had to resolve another problem: whether our imputation of a "forthwith"

judgment to the date of the verdict, pursuant to Super.Ct.Civ.R. 58, is too strained in view of other Superior Court rules which permit delay in the finality of a judgment. For example, Super.Ct.Civ.R. 62 precludes an enforcement action until the expiration of ten days after entry of judgment. Correspondingly, Super.Ct.Civ.R. 59 permits motions for alteration or amendment of judgment to be filed within ten days of entry of judgment. Moreover, Super.Ct. Civ.R. 54 (b), to which Rule 58 is expressly subjected, defers finality of each judgment in cases involving multiple claims and/or parties, for purposes of appealability, until "all the claims and the rights and liabilities of all the parties" are adjudicated, unless the trial court expressly determines "that there is no just reason for delay" and expressly directs "the entry of judgment."

Unhesitatingly, we conclude that these and other rules deferring finality of judgments have no bearing on the application of § 15–109 for purposes of dating the "judgment" on which interest accrues upon reinstatement of a verdict. Given the equitable policies underlying the interest statute, concepts of finality for purposes of enforcing, amending, or appealing a judgment have no "proper role to play in the calculation of post-verdict interest" under § 15–109. *Turner*, 702 F.2d at 757 n. 6; *see Hooks v. Washington Sheraton Corp.*, 206 U.S.App.D.C. 209, 213–14, 642 F.2d 614, 618–19 (1980) (Mikva, J., dissenting).[7]

---

**6.** We expressly reject decisions, such as *Givens v. Missouri-Kansas-Texas R. Co. of Texas*, 196 F.2d 905, 906 (5th Cir.1952), and *Woods Exploration & Producing Co. v. Aluminium Co. of Am.*, 509 F.2d 784, 789 (5th Cir.), *cert. denied*, 423 U.S. 833, 96 S.Ct. 59, 46 L.Ed.2d 52 (1975), which instead have deemed the date of judgment, for statutory interest purposes, to be the date some months after the verdict when the trial court erroneously entered a judgment n.o.v. Apparently, in *Givens* and *Woods Exploration*, the courts of appeals modified *Louisiana & Arkansas Ry. Co. v. Pratt*, 142 F.2d 847 (5th Cir.1944), to award interest as of the date of the erroneous judgment n.o.v., instead of the date of the verdict, because the trial court, in applying Fed.R.Civ.P. 58, had prevented entry of judgment of the verdict "forthwith" by "otherwise" directing entry of a judgment later. This analy-

sis makes no sense. The date of a plaintiff's judgment, for statutory interest purposes, has no rational relationship to the date of an erroneous defendant's judgment n.o.v. or to the date of some other judgment, *see* Super.Ct.Civ.R. 54 (a), such as an order for a new trial or dismissal for lack of jurisdiction.

**7.** Westinghouse argues that the original judgment was not final on the date it was entered, January 27, 1983, because of the ten-day hiatus created by Super.Ct.Civ.R. 59 and 62; that the ten days, measured by Super.Ct.Civ.R. 6, had not passed before the trial court vacated the judgment on February 7, 1983; that the judgment, accordingly, should be deemed a nullity; and thus that no interest should be awarded until the first real judgment in the case had been entered after remand. In view of our conclusion that, for § 15–109 purposes, interest

## IV.

Westinghouse argues, nonetheless, that the foregoing analysis should be irrelevant because D.C.App.R. 37 sends a *Briggs,* not a *Pratt,* message; it permits only this court, never the trial court, to award interest on reinstated judgments. Accordingly, says Westinghouse, because *Bell I* did not order interest from the date of the original verdict—despite Bell's request for us to do so—that ends the matter.

At the time we decided *Bell I,* and until January 1, 1985, D.C.App.R. 37 (1984) provided:

> Unless otherwise provided by law, if a judgment for money in a civil case is affirmed, whatever interest is allowed by law subsequent to the judgment of the superior court shall be payable from the date of that judgment. If a judgment is modified or reversed with a direction that a judgment for money be entered in the Superior Court, the prevailing party by motion filed in this Court within 10 days after judgment may request the allowance of such interest as he [or she] believes appropriate.

*Bell I* reversed an order for a new trial and ordered reinstatement of the original verdict. Pursuant to Super.Ct.Civ.R. 54 (a), a " '[j]udgment' ... includes a decree and any order from which an appeal lies." Accordingly, *Bell I* reversed a "judgment" and thus Rule 37 applies.

We note, first, that Rule 37 is permissive; the prevailing party, by motion, "may request the allowance of such interest...." Thus, Rule 37, by its terms, does not necessarily suggest an exclusive appellate court remedy. Even more significantly, however, the rule cannot override a statute. The last sentence of our Rule 37, which differs from Fed.R.App.P. 37, *supra* note 4, is obviously intended to flag the *Briggs* problem, as is the federal rule. *See* Fed.R. App.P. 37, Notes of Advisory Committee on

Appellate Rules. But now that we have resolved the *Briggs* problem by construing § 15–109 to require interest from the date of the verdict, when reinstated after reversal and remand, defense counsel and the trial courts may not rely on *Briggs* and Rule 37 to defeat a plaintiff's request for interest from the date of the verdict. In this respect, we ally ourselves with the Eighth and Ninth Circuits.

It is important to add that our decision in this case, as well as the equitable analysis underlying it, will not necessarily resolve cases, such as *Gele, supra* note 2, in which the equities arguably are more complicated. *See also Handgards,* 743 F.2d at 1298–1300. Our point with respect to Rule 37, however, is that it does not bar the trial court from awarding interest, based on an equitable application of § 15–109, when our mandate remanding a case—no matter how complex—is silent on the subject. Counsel are encouraged to apply to this court, pursuant to Rule 37, for allowance of interest when we fail to deal with interest expressly in our mandate. But, because of the statutory entitlement to interest under § 15–109, a plaintiff who prevails on appeal is not barred from proceeding directly to the trial court to ask for the interest he or she believes appropriate.

## V.

We reverse the trial court's March 4, 1985 order. We remand with instructions to award appellant interest on her $65,000 judgment at the statutory rate, accruing from the date of the verdict and judgment, January 27, 1983.

*Reversed and Remanded.*

NEBEKER, Associate Judge, concurring:

I concur in the result that the majority reached. However, I am writing separately to clarify what the majority's exhaustive

on the "judgment" runs from the date of the verdict in the situation presented here, this argument is irrelevant. In any event, Superior Court rules cannot modify a statute. Section

15–109 provides for interest beginning from the date of the judgment, not ten days later, after the date an enforcement action accrues or the period for filing a new trial motion expires.

analysis tends to obscure, namely that the statutory law in the District of Columbia easily resolves this case.

D.C. Code § 15–109 (1981) provides that in tort cases "the judgment for the plaintiff shall bear interest." The intent of this statute is to provide interest for the successful plaintiff from the date of judgment. On January 27, 1983, a jury awarded appellant Bell $65,000 in damages for her injuries resulting from appellee's negligence. On that date the trial court ordered judgment on the verdict "with interest thereon from 1–27–83 at the rate ... provided by law...." Section 15–109 dictates that the plaintiff's judgment "shall bear interest"; subsequent procedural events in this case notwithstanding, appellant Bell won a judgment for damages against appellee and thus is entitled to interest from the date of that judgment, *i.e.*, January 27, 1983.

The only other question that we might address concerns the accrual date for interest when a verdict is rendered and a judgment is not entered or is entered at a later date. In those cases, which are unlike the case before us, interest shall run from the date that judgment should have first been entered pursuant to Super.Ct.Civ.R. 58, which directs that "[u]pon a general verdict of a jury ... the Clerk, unless the Court otherwise orders, shall forthwith prepare, sign, and enter the judgment...." I believe that the District of Columbia statutory law and our rules of court furnish ample direction for the resolution of this case and others like it. Protracted forays into federal case law are more appropriate in those circumstances when such direction is truly needed.